UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WISCONSIN VOTER ALLIANCE, et al.,

        Plaintiffs,

        v.                                        Case No. 23-C-1416

DON M. MILLIS, et al.,

        Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

---

      Plaintiffs Wisconsin Voter Alliance (WVA), Ron Heuer, and Kenneth Brown brought this action under 42 U.S.C. § 1983 against the members of the Wisconsin Elections Commission (WEC), alleging violations of the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901, *et seq*. This matter comes before the court on Defendants' motion to dismiss. For the following reasons, the motion will be granted but without prejudice.

### BACKGROUND

**A. Statutory Scheme**

      HAVA was enacted in 2002 to "establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of federal elections," and for other purposes. Pub. L. No. 107-252, 116 Stat. 1666 (2002). HAVA provides two enforcement mechanisms. *See* 52 U.S.C. §§ 21111–12. First, the "Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District

Court" for declaratory and injunctive relief "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" under various HAVA provisions. 52 U.S.C. § 21111. Second, "any person who believes that there is a violation of" HAVA's uniform and nondiscriminatory election technology and administration requirements subchapter "may file a complaint" under the "State-based administrative complaint procedures." § 21112(a).

States that receive payment pursuant to a HAVA program must establish and maintain State-based administrative complaint procedures. § 21112(a)(1). HAVA's requirements for such complaint procedures include:

(A) The procedures shall be uniform and nondiscriminatory.

(B) Under the procedures, any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.

(C) Any complaint filed under the procedures shall be in writing and notarized, and signed and sworn by the person filing the complaint.

(D) The State may consolidate complaints filed under subparagraph (B).

(E) At the request of the complainant, there shall be a hearing on the record.

(F) If, under the procedures, the State determines that there is a violation of any provision of subchapter III, the State shall provide the appropriate remedy.

(G) If, under the procedures, the State determines that there is no violation, the State shall dismiss the complaint and publish the results of the procedures.

(H) The State shall make a final determination with respect to a complaint prior to the expiration of the 90-day period which begins on the date the complaint is filed, unless the complainant consents to a longer period for making such a determination.

(I) If the State fails to meet the deadline applicable under subparagraph (H), the complaint shall be resolved within 60 days under alternative dispute resolution procedures established for purposes of this section. The record and other materials from any proceedings conducted under the complaint procedures

2

> established under this section shall be made available for use under the alternative dispute resolution procedures.

§ 21112(a)(2)(A)–(I).

Wisconsin's HAVA administrative complaint procedure is set forth in Wis. Stat. § 5.061, entitled "Compliance with federal Help America Vote Act." That section provides:

> (1) Whenever any person believes that a violation of Title III of [HAVA] has occurred, is occurring, or is proposed to occur with respect to an election for national office in this state, that person may file a written, verified complaint with the commission.
>
> (2) If the commission receives more than one complaint under sub. (1) relating to the same subject matter, the commission may consolidate the complaints for purposes of this action.
>
> (3) A complainant under sub. (1) or any of the complainants in a consolidated complaint under sub. (2) may request a hearing and the matter shall then be treated as a contested case under ch. 227, except that the commission shall make a final determination with respect to the merits of the complaint and issue a decision within 89 days of the time that the complaint or the earliest of any complaints was filed, unless the complainant, or each of any complainants whose complaints are consolidated, consents to a specified longer period.
>
> (4) If the commission finds the complaint to be without merit, it shall issue a decision dismissing the complaint. If the commission finds that the violation alleged in the complaint has occurred, is occurring, or is proposed to occur, the commission shall order appropriate relief, except that the commission shall not issue any order under this subsection affecting the right of any person to hold an elective office or affecting the canvass of an election on or after the date of that election.

Wis. Stat. § 5.061.

**B. Factual Background**

The WVA is a statewide organization located in Kewaunee, Wisconsin. Compl. ¶ 5, Dkt. No. 1. Its members seek to ensure public confidence in the integrity of Wisconsin's elections and election results as well as Wisconsin's election systems, processes, procedures, and enforcement. *Id.* The WVA also "works to protect the rights of its members whenever laws, statutes, rules,

3

regulations, or government actions that threaten or impede the implied or expressed rights or privileges afforded them under our constitutions or laws or both." *Id.* Ron Heuer is the president of the WVA, and Kenneth Brown is one of its members. *Id.* ¶¶ 6–7.

On September 8, 2022, the WVA and Heuer filed an administrative complaint under Wis. Stat. § 5.061 against the WEC, alleging that the WEC violated HAVA's requirements to maintain its statewide voter registration database through the state's participation in the Electronic Registration Information Center (ERIC). *Id.* ¶ 36. More specifically, Plaintiffs alleged in their complaint that "Wisconsin Statutes § 6.36(1)(ae), which authorizes 'the transmission of information and data related to the registration of electors in this state [by the Wisconsin Elections Commission (WEC)] to the Electronic Registration Information Center, Inc., [ERIC] for processing and sharing with other member states and governmental units,' violates the Help America Vote Act (HAVA), 52 U.S.C. § 21083 (Pub. L. 107-252, title III, § 303, Oct. 29, 2002, 116 Stat. 1708)." Dkt. No. 1-1 at 2.

On October 19, 2022, the WEC sent Plaintiffs a letter explaining that the verified complaint was "being returned without consideration or dismissal" by the WEC. Dkt. No. 1-2 at 1. It reasoned that a complaint against the WEC warrants an ethical recusal by the body to avoid conflicts associated with deciding a matter brought against itself. *Id.* The WEC advised that Plaintiffs could submit the complaint to the district attorney for alleged criminal violations under Wis. Stat. § 5.05 or appeal the decision to the circuit court in accordance with Wis. Stat. § 5.06(8) for alleged administrative violations. *Id.* at 2.

On October 2, 2023, Plaintiffs filed a complaint under Wis. Stat. § 5.061 against the WEC, alleging that the WEC violated HAVA by issuing unlawful guidance that allows overseas absentee votes to be received through the Uniformed and Overseas Citizens Absentee Voting Act without

HAVA-required voter identity and eligibility verification. Compl. ¶ 40. On October 4, 2023, the WEC sent Plaintiffs a letter explaining that the verified complaint was "being returned without consideration or dismissal" by the WEC. Dkt. No. 1-4 at 1. As it explained in its October 19, 2022 letter, complaints against the WEC warrant its recusal to avoid conflicts associated with deciding a matter brought against it. *Id.* The WEC again advised that Plaintiffs could submit the complaint to the district attorney for alleged criminal violations under Wis. Stat. § 5.05 or appeal the decision to the circuit court in accordance with Wis. Stat. § 5.06(8) for alleged administrative violations. *Id.* at 2.

Plaintiffs allege that the WEC has a practice, policy, or custom of refusing to hold hearings, adjudicate, and provide remedies relating to HAVA administrative complaints filed against the WEC. Compl. ¶ 44. They maintain that the WEC's conduct related to the 2022 and 2023 administrative complaints violated Plaintiffs' right to an administrative complaint process, a hearing on the record, and an appropriate remedy under 52 U.S.C. § 21112. *Id.* ¶¶ 39, 43. Plaintiffs also allege that Wis. Stat. § 5.061 violates their federal rights under 52 U.S.C. § 21112 because it does not require an independent administrative law judge to hear, adjudicate, and provide remedies regarding HAVA administrative complaints against state election officials, including the WEC. *Id.* ¶ 60. Plaintiffs seek declaratory and injunctive relief.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of this court of the subject matter jurisdiction in the complaint. Fed. R. Civ. P. 12(b)(1). To survive a Rule 12(b)(1) motion, the plaintiff must establish that the jurisdictional requirements have been met. *Schaefer v. Transp. Media, Inc.*, 859 F.2d 1251, 1253 (7th Cir. 1988).

The proponent of federal jurisdiction must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint must contain factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he or she must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* In evaluating a motion to dismiss, the court must view the plaintiff's factual allegations and any inferences reasonably drawn from them in a light most favorable to the plaintiff. *See Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

## ANALYSIS

### A. Standing

Federal courts do not have jurisdiction to decide every legal question that may arise. Instead, Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies" brought by litigants who demonstrate standing. U.S. Const. art. III, § 2, cl. 1. The doctrine of standing is not an esoteric doctrine that courts use to avoid difficult decisions; it "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "In light of this 'overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of an

important dispute and to "settle" it for the sake of convenience and efficiency.'" *Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)) (alterations omitted). "The familiar 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement.'" *Gracia v. SigmaTron Int'l Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)).

Defendants contend that Plaintiffs have failed to allege the concrete harm to themselves needed to establish standing for Article III purposes. This is a facial challenge to the complaint. "[I]n evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim: '[C]ourts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Defendants assert that Plaintiffs have failed to allege an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "A concrete injury is a *real* injury—that is, one that actually exists, though intangible harms as well as tangible harms may qualify." *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (citation omitted).

Plaintiffs argue that their complaint meets Article III standing requirements because "HAVA provides for protectable federal rights." Pls.' Br. at 5, Dkt. No. 11. Even if HAVA provides for protectable federal rights, a plaintiff does not automatically satisfy "the injury-in-fact requirement whenever a statute grants a person a statutory right." *Spokeo*, 578 U.S. at 341.

7

Case 1:23-cv-01416-WCG   Filed 03/13/24   Page 7 of 12   Document 14

"Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Plaintiffs assert that they are harmed because "they cannot exercise their federal rights under 52 U.S.C. § 21112." Compl. ¶ 45. They allege that the need to obtain judicial relief for HAVA administrative complaints filed against the WEC is prohibitively expensive as it requires individuals to incur additional personal and other expenditures. *Id.* ¶ 47.

The need to pay a filing fee for judicial review, however, is hardly the kind of harm needed to satisfy the Article III case or controversy requirement. Although voter disenfranchisement through dilution caused by illegal votes might constitute the kind of harm required, *see Ohio Republican Party v. Brunner*, 582 F. Supp. 2d 957, 963 (S.D. Ohio 2008), *vacated on other grounds*, 555 U.S. 5 (2008), Plaintiffs offer no argument that the relief they seek is intended to prevent such harm. They do not even address Defendants' argument under *Spokeo* and *TransUnion, LLC v. Ramirez*, 1141 S. Ct. 2190 (2021), that at least a threat of concrete harm to them is required for standing. Plaintiffs simply assert that their complaint "meets Article III standing requirements as a 'facial challenge' because HAVA provides for protectable federal rights through 42 U.S.C. § 1983." Pls.' Br. at 5. That is not enough.

While the court might be able to construct an argument for standing, it would be improper for it to do so. "Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for failure to allege standing will therefore be granted. But because of the strong public

8

Case 1:23-cv-01416-WCG   Filed 03/13/24   Page 8 of 12   Document 14

interests in the integrity of elections and the possibility that the defect in Plaintiffs' complaint can be cured, the dismissal will be without prejudice.

**B. Failure to State a Claim**

Defendants also assert that the case must be dismissed because HAVA does not create a private cause of action. "Private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citation omitted). Plaintiffs do not dispute that HAVA, by its terms, does not create a private right of action. Instead, they maintain that 42 U.S.C. § 1983 supplies a remedy for the vindication of rights secured by federal statutes.

In determining whether a private right is enforceable either through 42 U.S.C. § 1983 or an implied right of action, the court must inquire "whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.*

"Congress established only two HAVA enforcement mechanisms: (1) a civil action brought by the Attorney General, and (2) a state-based administrative complaint procedure." *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019) (citing 52 U.S.C. §§ 21111–12). "Congress's creation of specific means of enforcing a statute indicates that it did not intend to allow an additional remedy—a private right of action—that it did not expressly mention at all." *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1270 (10th Cir. 2004); *see also Brunner*, 555 U.S. at 6 (vacating TRO requiring Ohio Secretary of State to update Ohio's statewide Voter Registration Database to comply with § 303 of HAVA on the ground that respondents were not likely to prevail on the question whether Congress authorized a district court to enforce § 303 in an action brought

9

by a private party).  It thus follows that Congress did not create a private right of action for individuals who wish to enforce the substantive provisions of HAVA in federal court.  That has been the consistent holding of other courts that have addressed the issue.  *See Tex. Voters Alliance v. Dallas Cnty.*, 495 F. Supp. 3d 441, 458–61 (E.D. Tex. 2020); *Oels v. Dunleavy*, No. 23-cv-6, 2023 WL 3948289 (D. Alaska June 12, 2023).

But here, Plaintiffs do not so much seek to have this court enforce the substantive provisions of HAVA.  Plaintiffs' primary goal is to require the WEC to provide the administrative remedy Congress intended.  Congress required States "to establish and maintain State-based administrative complaint procedures" as a condition of receiving funds under HAVA.  52 U.S.C. § 21112(a)(1).  Under the procedures the State is required to establish, "any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint."  *Id.* § 21112(a)(2)(B).  Thus, it appears clear that Congress intended to provide a state administrative remedy for "any person" for violations of HAVA.

Wisconsin has designated the WEC as the agency responsible for resolving such complaints.  But because Plaintiffs' complaints allege that the WEC has violated HAVA, the WEC claims it has a conflict of interest and is therefore required to recuse itself from addressing Plaintiffs' complaints. Instead of resolving Plaintiffs' complaints itself or providing an alternative procedure, WEC staff simply returned them to Plaintiffs with the suggestion that Plaintiffs either refer them to the local district attorney or appeal to the circuit court.  Dkt. Nos. 1-2; 1-4.

The suggestion that Plaintiffs submit a complaint to the local district attorney for alleged criminal violations makes little sense in that Plaintiffs' complaints were for violations of HAVA, not for violations of any criminal law.  As for appealing the WEC's refusal to consider Plaintiffs

complaints to the appropriate circuit court pursuant to § 5.06(8), it is unclear what Plaintiffs could appeal. Section 5.06(8) provides that a complainant who is aggrieved by an order of the WEC may appeal the decision to the circuit court. But the WEC did not render a decision. Its staff simply returned the complaints.

Even if that action is considered a decision of the WEC, the statute governing judicial review of Wisconsin administrative agency decisions significantly limits whatever action the court can take. Section 227.57(5), for example, provides that the court "shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law." But what is there to modify if no decision was rendered and no interpretation of law offered? And what good would an order remanding the case do if the WEC would simply recuse itself again?

Unable to resolve their complaints against the WEC through the State administrative procedure and faced with the prospect of never-ending remands and recusals, Plaintiffs filed this action for declaratory and injunctive relief under 42 U.S.C. § 1983 against the WEC. Seen in this light, this action is distinguishable from those on which the WEC relies. In each of those actions, individual plaintiffs were trying to use private federal court actions to force state election officials to comply with HAVA. To say that HAVA does not create a private right of action in federal court is not the same as holding that a state agency can thwart Congress' intent to provide a state administrative remedy for HAVA violations by denying complainants a forum in which to be heard.

Given the court's conclusion that Plaintiffs have failed to allege facts sufficient to show standing, it is unnecessary to decide whether under these circumstances Plaintiffs have a federal

11

Case 1:23-cv-01416-WCG   Filed 03/13/24   Page 11 of 12   Document 14

remedy against the WEC. Neither party has really addressed whether the recourse of an appeal to state court could provide the relief Plaintiffs seek. Accordingly, the court declines to rule on this issue at this time. Instead, Plaintiffs' complaint will be dismissed for failure to allege sufficient facts to show standing. The dismissal will be without prejudice, however, and Plaintiffs will be given thirty days from the date of this order to file an amended complaint. If they fail to do so, the action will be dismissed. In the event an amended complaint is filed, the WEC can renew its motion to dismiss for failure to state a claim.

## CONCLUSION

For these reasons, Defendants' motion to dismiss (Dkt. No. 7) is **GRANTED**. The dismissal is without prejudice, however, and Plaintiffs will be allowed thirty days from the date of this order to file an amended complaint. In the event they fail to do so, the action will be dismissed and final judgment entered.

**SO ORDERED** at Green Bay, Wisconsin this 13th day of March, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge