UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WISCONSIN VOTER ALLIANCE, et al.,

    Plaintiffs,

    v.    Case No. 23-C-1416

DON M. MILLIS, et al.,

    Defendants.

## DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On October 25, 2023, Plaintiffs Wisconsin Voter Alliance (WVA), Ron Heuer, and Kenneth Brown brought this action under 42 U.S.C. § 1983 against the members of the Wisconsin Elections Commission (WEC), alleging violations of the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901, *et seq.*, and seeking declaratory and injunctive relief. On March 13, 2024, the court granted Defendants' motion to dismiss, finding Plaintiffs failed to allege sufficient facts to show standing. But because there is a strong public interest in election integrity, the court allowed Plaintiffs to file an amended complaint. On April 12, 2024, Plaintiffs filed an amended complaint.

The matter is now before the court on Plaintiffs' motion for summary judgment. Defendants oppose and ask the court to instead grant summary judgment in their favor under Federal Rule of Civil Procedure 56(f)(1). Plaintiffs did not reply and the time to do so has passed. So, Plaintiffs' motion is ripe for the court's adjudication. While the parties devote most of their briefing to merits issues, this case ends where the court must begin—jurisdiction. For the following reasons, Plaintiffs' motion will be denied, and the case will be dismissed.

## BACKGROUND

A. **Statutory Scheme**

HAVA was enacted in 2002 to "establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of federal elections," and for other purposes. Pub. L. No. 107-252, 116 Stat. 1666 (2002). HAVA provides two enforcement mechanisms. *See* 52 U.S.C. §§ 21111–12. First, the "Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court" for declaratory and injunctive relief "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" under various HAVA provisions. § 21111. Second, "any person who believes that there is a violation of" HAVA's uniform and nondiscriminatory election technology and administration requirements subchapter "may file a complaint" under the "State-based administrative complaint procedures." § 21112(a).

States that receive payment pursuant to a HAVA program must establish and maintain State-based administrative complaint procedures. § 21112(a)(1). HAVA's requirements for such complaint procedures include:

(A) The procedures shall be uniform and nondiscriminatory.

(B) Under the procedures, any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.

(C) Any complaint filed under the procedures shall be in writing and notarized, and signed and sworn by the person filing the complaint.

(D) The State may consolidate complaints filed under subparagraph (B).

(E) At the request of the complainant, there shall be a hearing on the record.

(F) If, under the procedures, the State determines that there is a violation of any provision of subchapter III, the State shall provide the appropriate remedy.

(G) If, under the procedures, the State determines that there is no violation, the State shall dismiss the complaint and publish the results of the procedures.

(H) The State shall make a final determination with respect to a complaint prior to the expiration of the 90-day period which begins on the date the complaint is filed, unless the complainant consents to a longer period for making such a determination.

(I) If the State fails to meet the deadline applicable under subparagraph (H), the complaint shall be resolved within 60 days under alternative dispute resolution procedures established for purposes of this section. The record and other materials from any proceedings conducted under the complaint procedures established under this section shall be made available for use under the alternative dispute resolution procedures.

§ 21112(a)(2)(A)–(I).

Wisconsin's HAVA administrative complaint procedure is set forth in Wis. Stat. § 5.061, entitled "Compliance with federal Help America Vote Act." That section provides:

(1) Whenever any person believes that a violation of Title III of [HAVA] has occurred, is occurring, or is proposed to occur with respect to an election for national office in this state, that person may file a written, verified complaint with the [WEC].

(2) If the [WEC] receives more than one complaint under sub. (1) relating to the same subject matter, the [WEC] may consolidate the complaints for purposes of this action.

(3) A complainant under sub. (1) or any of the complainants in a consolidated complaint under sub. (2) may request a hearing and the matter shall then be treated as a contested case under ch. 227, except that the [WEC] shall make a final determination with respect to the merits of the complaint and issue a decision within 89 days of the time that the complaint or the earliest of any complaints was filed, unless the complainant, or each of any complainants whose complaints are consolidated, consents to a specified longer period.

(4) If the [WEC] finds the complaint to be without merit, it shall issue a decision dismissing the complaint. If the [WEC] finds that the violation alleged in the complaint has occurred, is occurring, or is proposed to occur, the [WEC] shall order appropriate relief, except that the [WEC] shall not issue any order under

3

>     this subsection affecting the right of any person to hold an elective office or affecting the canvass of an election on or after the date of that election.

Wis. Stat. § 5.061.

**B.     Factual Background**

The material facts in this case are not copious, nor are they in dispute. The WVA is an issue-advocacy organization. Defs.' Resp. to Pls.' Statement of Material Facts (SOF) ¶ 2, Dkt. No. 41. Ron Heuer is the president of the WVA, and Kenneth Brown is one of its members. *Id.* ¶¶ 17, 24. The WVA's core activities include "working and serving in ways that protect the rights of the organization, where applicable, and its members, and those associated with the WVA, whenever laws, statutes, rules, regulations, or government actions (at whatever level, federal, state, county, city or actions of their respective officials) threaten or impede implied or expressed rights or privileges afforded to them under the federal or state constitutions, laws, or regulations." *Id.* ¶ 2. More specifically, the WVA and its members file "administrative complaints with or against the [WEC] for alleged [HAVA] violations." *Id.* ¶ 6; *see also id.* ¶¶ 7–10.

This case centers on two HAVA complaints that Plaintiffs filed. On September 8, 2022, the WVA and Heuer filed an administrative complaint under Wis. Stat. § 5.061 against the WEC, alleging that the WEC violated HAVA's requirements to maintain its statewide voter registration database through the state's participation in the Electronic Registration Information Center (ERIC) and requesting an evidentiary hearing on the matter. *Id.* ¶¶ 27–29; *see also* 2022 WEC Complaint, Dkt. No. 1-1. On October 19, 2022, the WEC sent the WVA a letter explaining that the verified complaint was "being returned without consideration or dismissal" by the WEC because a complaint brought against the WEC itself warranted "ethical recusal" by the WEC. Defs.' Resp. to Pls.' SOF ¶ 30; *see also* WEC Return Letter, Dkt. No. 1-2.

On October 2, 2023, Plaintiffs collectively filed another complaint under Wis. Stat. § 5.061 against the WEC, alleging that the WEC violated HAVA by issuing unlawful guidance that allows overseas absentee votes to be received through the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301, *et seq.*, without HAVA-required voter identity and eligibility verification and requesting an evidentiary hearing on the matter. Defs.' Resp. to Pls.' SOF ¶ 34; *see also* 2023 WEC Complaint, Dkt. No. 1-3. On October 4, 2023, the WEC sent Plaintiffs a letter functionally identical to that the WEC sent Plaintiffs on October 19, 2022. Defs.' Resp. to Pls.' SOF ¶ 36. The letter explained that the verified complaint was "being returned without consideration or dismissal" by the WEC because a complaint brought against the WEC itself warranted "ethical recusal" by the WEC. *Id.* ¶¶ 36–37; *see also* WEC Return Letter, Dkt. No. 1-4.

Plaintiffs generally contend that they are entitled to declaratory and injunctive relief because the WEC's 2022 and 2023 "non-decision" response letters violated their federally protected rights. Defendants counter that they are entitled to summary judgment because, undisputed facts aside, neither HAVA nor § 1983 provide a private cause of action on which Plaintiffs can assert their claims in federal court. The court will not reach the cause of action question as this case is resolved at the antecedent question of standing.

**ANALYSIS**

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court may grant summary judgment to the nonmovant under Federal Rule of Civil Procedure 56(f). *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 613 (7th Cir. 2017) (citing other sources).

5

As this court has already said, federal courts do not have jurisdiction to decide every legal question that may arise. Instead, Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies" brought by litigants who demonstrate standing. U.S. Const. art. III, § 2, cl. 1. The doctrine of standing is not an esoteric doctrine that courts use to avoid difficult decisions; it "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (alterations omitted) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))). It is because of "this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere" that the court "must put aside the natural urge to proceed directly to the merits of an important dispute and to settle it for the sake of convenience and efficiency." *Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013) (alterations and internal quotation marks omitted) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). So, "[t]he court is bound to ask and answer for itself" the standing question, "even when not otherwise suggested, and without respect to the relation of the parties to it." *Steel Co.*, 523 U.S. at 94 (quoting *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900)).

"The familiar 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement.'" *Gracia v. SigmaTron Int'l Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021) (quoting *Steel Co.*, 523 U.S. at 103–04). "The party invoking federal jurisdiction bears the burden of establishing these elements" and must prove them "in the same way as any other matter on which [the party] bears the burden of proof." *Lujan v. Defenders of*

6

*Wildlife*, 504 U.S. 555, 561 (1992). Injury in fact is at issue here. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs have shown their claimed injury is particularized and actual—each was privy to a WEC proceeding that resulted in the WEC issuing a "no decision" response letter. But Plaintiffs have not shown that their claimed injury is concrete.

"A concrete injury is a *real* injury—that is, one that actually exists, though intangible harms as well as tangible harms may qualify." *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (citation omitted). Where a purported harm is intangible, "both history and the judgment of Congress play important roles." *Spokeo*, 578 U.S. at 340. As to the former, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (citing another source). As to the latter, "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* at 341 (alterations omitted) (quoting *Lujan*, 504 U.S. at 578). But the Court went on to caution that

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.*; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("Unlike redressability, however, the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). More specifically and as relevant here, "[a] citizen may not sue based only

7

on an 'asserted right to have the Government act in accordance with law.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)). And yet, that is the thrust of Plaintiffs' argument.

As to Heuer and Brown, Plaintiffs argue that the two have not had their HAVA complaints against the WEC adjudicated and intend to file HAVA complaints in the future; therefore, they have suffered a harm that is "real" and "immediate." Pls.' Br. in Supp. at 38, Dkt. No. 32 (citing Pls.' SOF ¶ 25, Dkt. No. 35 ("[Brown] had expectations, as understood under the law, rules, or regulations, that the Commission would render an adjudication—a decision. It was [Brown]'s understanding the Commission had to make a decision, but he did not get a decision, which concerns him because he will file HAVA complaints in the future.")); *see also* Defs.' Resp. to Pls.' SOF ¶ 22. In essence, Heuer and Brown argue they were harmed because the WEC has not followed 52 U.S.C. § 21112(a). That is not enough.

Plaintiffs also contend that the WVA has organizational standing. Organizations can establish standing "to sue on their own behalf for injuries they have sustained." *All. for Hippocratic Med.*, 602 U.S. at 393 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)). To do so, an organization "must satisfy the usual standards for injury in fact, causation, and redressability." *Id.* at 394. But as with an individual, "an organization may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct, 'no matter how longstanding the interest and no matter how qualified the organization.'" *Id.* (internal citation omitted) (first quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982); and then quoting *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)).

8

Plaintiffs have not shown that the WVA has suffered an injury in fact. In an attempt to do so, they reassert that the WVA has been harmed by the WEC's failure to adjudicate its HAVA complaints. Plaintiffs further argue that "the WEC's actions have directly affected and interfered with the WVA's core political activities" because the WVA has been forced to divert resources from other initiatives to litigating in federal court. Pls.' Br. in Supp. at 36; Defs.' Resp. to Pls.' SOF ¶ 12. But the Supreme Court has shut the door on that argument:

> [A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way. . . . Indeed, that theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies.

*All. for Hippocratic Med.*, 602 U.S. at 394–95. Thus, the WVA comes up short like Heuer and Brown; it does not have organizational standing.

One final point. There may be concern that if Heuer, Brown, and the WVA do not have standing, then who does? The Court also answered this question in *Alliance for Hippocratic Medicine*. There, the Court observed that it "has long rejected that kind of 'if not us, who?' argument as a basis for standing." 602 U.S. at 396 (citing other sources). For "[t]he Framers of the Constitution did not 'set up something in the nature of an Athenian democracy or a New England town meeting to oversee the conduct of the . . . Government by means of lawsuits in federal courts.'" *Id.* (quoting *United States v. Richardson*, 418 U.S. 166, 179 (1974)). Thus, it may be that some issues are necessarily "left to the political and democratic processes." *Id.* In this case, Defendants note that HAVA contains a remedy for allegedly deficient administrative complaint procedures—a federal audit. Plaintiffs may wish to consider pursuing that remedy for the relief they seek.

In sum, Plaintiffs have not shown that Heuer, Brown, or the WVA have suffered an injury in fact. Accordingly, they do not have standing to proceed in federal court, so the court must deny their motion for summary judgment and dismiss this action.

**IT IS THEREFORE ORDERED** that Plaintiffs' motion for summary judgment (Dkt. No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is dismissed for lack of standing. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 31st day of January, 2025.

_____
William C. Griesbach
United States District Judge